**FILED**
**Dec 08, 2021**
**02:57 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT GRAY

| | | |
|---|---|---|
| **ENRIQUE DEAGUILA,** | ) | **Docket No.: 2020-02-0367** |
| **Employee,** | ) | |
| **v.** | ) | |
| **PODS ENTERPRISES, LLC,** | ) | **State File No.: 35113-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **LIBERTY MUTUAL INSURANCE** | ) | **Judge Brian K. Addington** |
| **CORPORATION,** | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER

The Court held an expedited hearing on December 1, 2021, on Enrique Deaguila's request for additional medical and temporary disability benefits, and attorney fees. PODS disputed Mr. Deaguila's entitlement to additional benefits. The Court finds that Mr. Deaguila would likely succeed in part at a hearing on the merits and is entitled to some of the requested benefits, but not attorney fees.

### History of Claim

Mr. Deaguila worked as a delivery driver for PODS. On May 9, 2019, he fell in loose gravel, injuring his right knee and arm.[1] PODS later offered a panel of physicians, and he chose Dr. Michael Wells.

Mr. Deaguila first saw Dr. Wells on July 12. Dr. Wells primarily focused on Mr. Deaguila's knee and determined he tore his meniscus. At the next appointment, Dr. Wells examined his right wrist and shoulder, and he diagnosed a torn labrum in the shoulder. Dr. Wells deferred shoulder surgery because Mr. Deaguila wanted some time for his shoulder to "cool off." Dr. Wells also referred him to Dr. Kent Lord for the wrist injury.[2]

---

[1] Mr. Deaguila had significant pre-existing injuries to his right knee, shoulder, and wrist.

[2] Dr. Wells restricted Mr. Deaguila from work as of October 29.

1

Dr. Wells continued to treat Mr. Deaguila's knee and shoulder. He again recommended shoulder surgery, but PODS did not authorize it. Dr. Wells later determined that the fall exacerbated Mr. Deaguila's shoulder condition but believed most of his shoulder symptoms were related to pre-existing degenerative problems. He placed Mr. Deaguila at maximum medical improvement regarding as to the shoulder on June 19, 2020.

As for the knee, Dr. Wells ultimately performed surgery and released Mr. Deaguila at maximum medical improvement on June 19. He placed permanent restrictions of limited weight-bearing and no crawling, stooping, or climbing.

As to the wrist, Dr. Lord initially treated it conservatively. Later, he recommended a thumb CMC arthroplasty because he believed the fall aggravated pre-existing arthritis in the CMC joint of the thumb. He determined that the fall was the primary cause of the aggravation and Mr. Deaguila is not at maximum medical improvement. He set temporary work restrictions of no use of the right hand.[3] PODS did not approve the surgery, although a peer review by Dr. Andrew Farber found it medically necessary.

*Independent Medical Examinations*

Both parties obtained independent medical evaluations, consulting with equally qualified experts.

PODS obtained its evaluation from Dr. Leslie Whitman, who examined Mr. Deaguila in September 2020. Dr. Whitman noted Mr. Deaguila's significant past medical history that included knee surgeries and a 2016 automobile accident in which he injured the right side of his body.

Dr. Whitman determined Mr. Deaguila had arthritis because of his previous knee surgeries and that Dr. Wells's treatment was appropriate to address the aggravation. However, he also determined that any lingering problems were due to the pre-existing arthritis and not the 2019 work injury.

Concerning the shoulder, Dr. Whitman did not have access to a prior 2016 MRI. He found that Mr. Deaguila did not have significant anatomic change within the shoulder, and there was no need for further treatment.

Regarding the wrist and thumb, Dr. Whitman stated that Mr. Deaguila's pain was initially in the wrist, but Dr. Lord found the problem to be the CMC thumb joint. Dr. Whitman felt Mr. Deaguila's original wrist pain was not associated with the CMC joint pain, which occurred later and involved two separate body parts. He felt that because the injections Dr. Lord provided were not helpful, the CMC arthroplasty was not necessary.

---

[3] PODS paid temporary disability benefits until September 24, 2020 but stopped them based on Dr. Whitman's IME opinion that Mr. Deaguila's CMC problems were not work-related.

2

Mr. Deaguila obtained an evaluation from Dr. William Kennedy in February 2021. Dr. Kennedy determined the fall at work was the primary cause of the torn meniscus and worsening of the pre-existing arthritis. He felt that if Mr. Deaguila had undergone gradual worsening of the knee before the fall at work, then he would have needed treatment before the fall. But that did not occur, as he had worked without restrictions.

Concerning the shoulder, Dr. Kennedy felt the fall was the primary cause of the worsened tearing in Mr. Deaguila's glenoid labrum in his shoulder. He believed the arthroscopic surgery recommended by Dr. Wells was medically necessary.

As for the right wrist, Dr. Kennedy determined that the problem was the CMC joint, and the fall at work was the primary cause of the worsening and instability of the joint.

### Mr. Deaguila's testimony

Mr. Deaguila testified that he continues to have pain in his knee, shoulder, and thumb. He said his knee pops and swells, that his shoulder has limited movement, and his CMC joint is painful and must be braced. He further testified that although he had pre-existing conditions, he was able to work without restrictions before the injury but has not been able to obtain any work with his current restrictions.

Mr. Deaguila wanted continuing medical benefits for his injuries, including the surgeries recommended by Dr. Wells and Dr. Lord. He also argued that he was not at maximum medical improvement and is entitled to temporary partial disability benefits because he cannot work. He further requested that the Court order PODS to pay his attorney fees for wrongly terminating his benefits.

PODS argued that, at most, Mr. Deaguila aggravated pre-existing conditions, and the aggravations have now resolved. PODS further argued that the CMC joint was not injured in the fall, but that Mr. Deaguila merely sustained a wrist contusion. Finally, PODS argued that Mr. Deaguila was not entitled to any additional medical benefits, and it was entitled to a credit for overpaid temporary disability benefits.

### Findings of Fact and Conclusions of Law

Mr. Deaguila must prove he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*7-8, 9 (Mar. 27, 2015).

Because Dr. Wells is Mr. Deaguila's authorized physician, his causation opinion is presumed correct, subject to rebuttal by a preponderance of the evidence. *See* Tenn. Code Ann.§ 50-6-102(14)(E).

Dr. Wells concluded that Mr. Deaguila's knee injury was primarily work related. Nevertheless, PODS terminated Mr. Deaguila's treatment for the knee, based on Dr. Whitman's opinion. Dr. Kennedy agreed with Dr. Wells that the fall exacerbated Mr.

3

Deaguila's knee condition. The Court finds the opinions of Drs. Wells and Kennedy more persuasive. The Court holds that Mr. Deaguila is likely to prevail at a hearing on the merits in proving his knee injury is causally related to his work. He may return to Dr. Wells for additional treatment.

Dr. Wells also stated that Mr. Deaguila exacerbated his pre-existing shoulder condition, but his current shoulder complaints were not primarily work related. Dr. Whitman shared this opinion. Dr. Kennedy disagreed, but instead felt Mr. Deaguila aggravated his pre-existing condition, and that the aggravation was primarily related to the work. Considering these opinions and presuming Dr. Wells is correct as required, the Court holds Mr. Deaguila would not likely prevail at a hearing on the merits as to his shoulder injury.

Dr. Lord provided a causation opinion on the CMC joint. Because Mr. Deaguila did not choose Dr. Lord from a panel of physicians, the Court does not attach a presumption of correctness to his opinion. *Gilbert v. United Parcel Serv., Inc.,* 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). Dr. Lord stated that Mr. Deaguila's fall primarily caused the aggravation of his CMC joint condition and recommended surgery. Dr. Whitman determined that Mr. Deaguila did not originally complain about the CMC joint but the wrist, and therefore it was not related to the fall. However, Dr. Kennedy agreed with Dr. Lord and noted that the wrist and CMC joint are close but separate issues, and the fall aggravated his pre-existing CMC joint condition.

Based on this evidence, the Court finds that the opinions of Drs. Lord and Kennedy outweigh that of Dr. Whitman concerning the CMC joint, and Mr. Deaguila is likely to succeed at a hearing on the merits concerning the work relatedness of his CMC joint injury. Therefore, PODS shall authorize and schedule the surgery with Dr. Lord.

The Court's holding that Mr. Deaguila needs surgery, and the fact that he is under work restrictions, lead to the issue of temporary disability benefits. An injured worker is entitled to temporary partial disability benefits if the work injury prevents him from earning his average weekly wage. Tenn. Code Ann. § 50-6-207(2). Here, Mr. Deaguila has been unable to find work because of Dr. Lord's restriction of no use of his right hand. Thus, the Court holds that Mr. Deaguila is entitled to past temporary partial disability benefits from the last date PODS paid benefits, September 20, 2020, through the present, a period of sixty-three weeks and three days. Payments shall continue until he reaches maximum medical improvement or is released from restrictions.

Finally, because PODS stopped his benefits, Mr. Deaguila requested attorney fees for wrongful denial under Tennessee Code Annotated 50-6-226(d)(1)(B). Attorney fees may be awarded at the interlocutory stage when "highly unusual circumstances" are present, for example when an employer denies a claim based on its own interpretations of the medical evidence, denies a claim without reasonably investigating it, ignores evidence

4

that favors the injured worker, or declines to reconsider a denial of a claim after new evidence is provided. *Travis v. Carter Express, Inc*., 2019 TN Wrk. Comp. App. Bd. LEXIS 25, at \*14 (June 24, 2019); *see also Thompson v. Comcast Corp*., 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at \*28-9 (Jan. 30, 2018). A denial of attorney fees at the interlocutory stage of a case does not preclude an award of fees at the conclusion of the case. *Travis,* at \*13.

Here, the Court does not find the requisite "highly unusual circumstances" to award fees at the interlocutory stage. However, the Court might reconsider the issue at the conclusion of the case on proper motion.

**IT IS, THEREFORE, ORDERED as follows:**

1. PODS shall provide Mr. Deaguila with medical benefits under Tennessee Code Annotated 50-6-204. He may return to Dr. Wells as needed, and PODS shall schedule the surgery with Dr. Lord.

2. The Court denies Mr. Deaguila's request for additional medical benefits related to his shoulder at this time.

3. Mr. Deaguila is entitled to past temporary partial disability benefits in the amount of $29,265.93, for the period of September 20, 2020, to the present, which represents sixty-three weeks and three days.[4] Payments shall continue until he reaches maximum medical improvement or is released from restrictions.

4. This case is scheduled for a status hearing on **Tuesday, January 11, 2022, at 10:00 a.m. Eastern Time**. The parties must dial **855-543-5044** to participate. Failure to call might result in a determination of the issues without your participation.

5. Unless interlocutory appeal of the Expedited Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The insurer or self-insured employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than seven business days after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

---

[4] This amount was calculated using the stipulated weekly compensation rate of $461.40.

**ENTERED December 8, 2021.**

*Brian K. Addington*
_____
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Enrique Deaguila's Affidavit
2. Wage Statement
3. Stipulation of Compensation Rate
4. Independent Medical Examination Report of Dr. William Kennedy
5. Rule 72 Declaration Statement of Laureen Druker
6. Rule 72 Declaration Statement and Supplemental Statement of Kimberly Jenkins
7. Standard Form Medical Report of Dr. Kent J. Lord
8. Medical Record Table of Contents
9. Supplemental Medical Record Table of Contents
10. Notice of Filing Deposition Transcript of Dr. Leslie Whitman
11. Notice of Filing Deposition Transcript of Dr. William Kennedy
12. Peer Review by Dr. Andrew Farber of Dr. Lord
13. Peer Review by Dr. Christopher Dougherty of Dr. Wells.

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Status Order
5. Order Setting Expedited Hearing
6. Notice of Filing of Deposition Transcript of Dr. Leslie Whitman
7. Stipulation of Compensation Rate
8. Hearing Request
9. Agreed Order of Substitution
10. Employee's Notice of Intent to Use Standard Form Medical Report of Treating Physician Kent J. Lord, M.D.
11. Employer's Witness List
12. Employers Position Statement and Table of Contents
13. PODS exhibit list

6

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on December 8, 2021.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|----------------|-----|-------|------------------|
| Jacqulyn Jones and Jeffrey Taylor, Employee's Attorneys | | | X | jacqulyn@terry-lawfirm.com<br>jeff@taylorlawfirmtn.com<br>kathy@taylorlawfirmtn.com |
| Eric Shen, Employer's Attorney | | | X | eric.shen@libertymutual.com<br>laura.johnson-peay@libertymutual.com<br>kimberly.jenkins@libertymutual.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*